**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| KIPP FLORES ARCHITECTS, LLC, *Plaintiff* | § § § | |
| -vs- | § § | SA-21-CV-01158-XR |
| AMH CREEKSIDE DEVELOPMENT, LLC, AMERICAN HOMES 4 RENT, AMERICAN HOUSING VENTURES, LLC, *Defendants* | § § § § § § | |

**AMENDED ORDER**

On this date, the Court considered the motions to dismiss filed by Defendant American Housing Ventures (ECF No. 17) and Defendants AMH Creekside Development and American Homes 4 Rent (ECF No. 18). After carefully reviewing the Parties' briefing and holding a hearing on the motion, the Court issues the following amended order.[1]

**BACKGROUND**

Plaintiff Kipp Flores Architects, LLC ("KFA") is an architecture firm that creates architectural works and technical drawings depicting such works. ECF No. 15 ¶ 7. KFA owns copyrights to several architectural works material to this suit. *Id.* ¶ 17. Defendant AMH Creekside Development, LLC ("AMH Creekside") owns and operates Creekside Ranch, a real estate development in New Braunfels, Texas. *Id.* ¶ 2. Defendant American Homes 4 Rent ("AH4R" and, together with AMH Creekside, the "AMH Creekside Defendants") is a real estate investment trust that manages and controls AMH Creekside's affairs. *Id.* ¶¶ 9, 11. Defendant American Housing

---

[1] The Court issues this amended order to correct certain clerical errors in the order originally issued on August 9, 2022 (ECF No. 48).

Ventures, LLC ("AHV") is a real estate development firm who managed the development of Creekside Ranch.

In January 2016, KFA and AHV executed a license agreement for the use of KFA's copyrighted architectural works in the Austin, Texas market. *Id.* ¶ 19. AHV obtained copies of the copyrighted architectural works from KFA in 2016 per the license agreement and constructed houses embodying those works at the AHV developments in Pflugerville, Texas and Georgetown, Texas. ECF No. 15 ¶¶ 34–35. KFA's copyrighted architectural works were transmitted to AHV in the electronic form of .pdf, .dwg, and/or .dwf files. *Id.* ¶ 37. Each copy contained a copyright notice tag which read:

> All rights reserved. © 2002 Kipp Flores Architects LLC The arrangements depicted herein are the sole property of Kipp, Flores Architects, and may not be reproduced in any form without its written permission. This copyright notice and use restrictions are "Copyright Management Information" under the Digital Millennium Copyright Act. It is included to detect and deter copyright infringement, and as such must not be modified or omitted.

*Id.* ¶ 36.

As part of the Georgetown and Pflugerville development projects, AHV hired third party AGS Graphics in 2016 to generate stylized floorplan drawings of KFA's copyrighted works for marketing purposes. *Id.* ¶ 41. KFA provided copies of its architectural works to AGS Graphics in electronic form after AGS Graphics executed a Limited Use Agreement concerning the works. *Id.* ¶ 42. Each of these copies contained KFA's Copyright Management Information ("CMI"). *Id.* ¶ 43. The Limited Use Agreement prohibited AGS Graphics from removing or altering KFA's CMI and required that the notice be maintained on all copies of KFA's architectural works, including the copies used in advertising and marketing. *Id.* ¶ 44. AGS then created the floorplans and three-dimensional renderings of KFA's copyrighted works, but it failed to include KFA's CMI.

AHV received floorplan drawings from AGS Graphics in 2016 similar to the following:



*Id.* ¶¶ 45, 51, 57. The floor plan drawings reflected KFA Plan 1529, KFA Plan 1904, and KFA Plan 1484. *Id.* ¶¶ 46, 52, 58. AHV also received the following rendering of building elevations from AGS in 2016:



*Id.* ¶ 63.

AHV additionally hired third party BluEnt in 2016 to generate three-dimensional renderings of KFA's copyrighted works for marketing the Austin developments *Id.* ¶ 69. Similarly, KFA provided copies of its works to BluEnt after BluEnt executed a Limited Use Agreement concerning the works. *Id.* ¶ 70. Each of these copies contained KFA's CMI. *Id.* ¶ 71. The Limited Use Agreement prohibited BluEnt from removing or altering KFA's CMI and required that the

notice be maintained on all copies of KFA's architectural works, including the copies used in advertising and marketing. *Id.* ¶ 72. BluEnt then created the floorplans and three-dimensional renderings of KFA's copyrighted works, but it failed to include KFA's CMI.[2]

AHV received numerous building elevation renderings from BluEnt in 2016 similar to the following:



*Id.* ¶ 73. AHV distributed the renderings received from BluEnt to AMH Creekside and AH4R in connection with Creekside Ranch. *Id.* ¶ 96–97, 121–122, 146–147.

KFA alleges that AHV employees themselves created floor plan drawings and building elevation renderings in 2016 that are copies of KFA Plan 1529, KFA Plan 1904, and KFA Plan 1484. *Id.* ¶¶ 148, 153, 158, 163, 168, 173. KFA further alleges that in 2016, AHV created an "AHV Product Library" document and PowerPoint presentation which included its architectural works— those floorplan drawings and building elevation renderings that AHV had received from AGS

---

[2] The amended complaint is not clear on how AGS or BluEnt created the floorplans and renderings. However, what is clear is that AGS and BluEnt's floorplans and renderings are not identical copies of the files that KFA provided to AGS and BluEnt, and that the floorplans and renderings are in a different format than the files KFA provided to AGS and BluEnt.

Graphics and BluEnt, as well as those created by AHV employees. *Id.* ¶¶ 178–81. KFA's CMI was not included on the floorplan drawings or renderings kept in the AHV Product Library. *Id.* ¶ 182.

In late 2017, AHV advised KFA that it wanted to use KFA's copyrighted works in a new development in New Braunfels, Texas, known as Creekside Ranch. *Id.* ¶ 183. AHV and AMH Creekside entered into a development agreement, under which AHV became the development manager of Creekside Ranch. *Id.* ¶ 186.

On April 2, 2019, AHV partially assigned its rights to use KFA's copyrighted works under the license agreement to AMH Creekside by letter agreement. *Id.* ¶ 188. The letter agreement between KFA, AHV, and AMH Creekside provides that "AMH [Creekside] hereby accepts and assumes all of the terms, benefits and obligations of the 'Client' set forth in the License Agreement with respect to the [Creekside Ranch] Project." ECF No. 15-2 at 2. KFA alleges that, despite their awareness that the License Agreement required KFA's CMI to remain on reproductions of KFA's works, Defendants distributed, or caused each other or third parties to distribute, one or more copies of the floorplan drawings and building elevation renderings. *Id.* ¶ 202–73. KFA claims that these distributions were "in violation of the explicit terms of the License Agreement, violated KFA's exclusive right of distribution, and thus violated KFA's copyrights." *Id.* ¶ 253. KFA also alleges that AHV distributed the floorplan drawings and building elevation renderings "in connection with the development and marketing of Creekside Ranch" with the knowledge and intent that AMH Creekside and AH4R would further distribute them in the advertising and marketing activities related to Creekside Ranch. *Id.* ¶¶ 256–57.

KFA alleges that, through a Notice of Default dated August 2, 2021, it notified Defendants that "their publication of copies of KFA's architectural works without the requisite [CMI] was a violation of the License Agreement." *Id.* ¶ 280. KFA also alleges that it sent a Notice of

Termination to AMH Creekside and AH4R on November 10, 2021, "invoking KFA's rights under Section VII.c of the License Agreement, demanding that AMH Creekside cease further use of KFA's architectural works" and return all materials belonging to KFA. *Id.* ¶ 281. KFA asserts that AMH Creekside has not returned KFA's property. *Id.* ¶ 282.

Based on these allegations, KFA brings claims against all Defendants for alleged violations of the Digital Millennium Copyright Act ("DMCA") and for direct and contributory copyright infringement. *Id.* ¶¶ 283–333. KFA additionally asserts claims of conversion and for specific performance against the AMH Creekside Defendants for their alleged failure to comply with the Licensing Agreement. *Id.* ¶¶ 334–55. Defendants seek dismissal of all claims asserted against them. ECF Nos. 17, 18. On May 3, 2022, the Court held a hearing on the motions.

## DISCUSSION

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must set forth factual content that permits the courts to draw the reasonable inference that the defendant is liable." *Patrick v. Wal–Mart, Inc.-*

*Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II.   Analysis

Defendants seek dismissal of KFA's claims under the DMCA, for copyright infringement, conversion, and specific performance. The Court discusses each claim in turn.

### A.  Digital Millennium Copyright Act

A plaintiff must allege the following to plead a claim under the DMCA, § 1202(b): "(1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] . . . works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or . . . having

reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (quoting *Univ. City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001)) (alterations in original). Defendants contend that KFA has failed to allege a claim under the DMCA because KFA's CMI was never "removed or altered" from its architectural works.

Defendants argue that KFA cannot state a claim under § 1202(b)(3). They argue that KFA sent AGS Graphics and BluEnt files containing copies of its works with CMI. In turn, AGS and BluEnt then created the floorplans and three-dimensional renderings based on the files that KFA had sent to them and did not affirmatively add KFA'S CMI. Defendants argue that this conduct cannot give rise to liability under the DMCA. The Court agrees. "Removal" of CMI from a copyrighted work is not the same as the failure to add CMI to a nonidentical rendition or a derivative of the protected work. *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. 21-CV-673-XR, 2022 WL 1105751, at *3 (W.D. Tex. Apr. 13, 2022).

To establish liability under the DMCA, CMI must have been "removed" from the copyright owner's work. 17 U.S.C. § 1202. Merriam-Webster Dictionary defines "remove" as "taking away or off," or "to get rid of" something. *Remove*, Merriam-Webster, https://www.merriam-webster.com/dictionary/remove (last visited July 22, 2022). Thus, to establish a claim under the DMCA, a plaintiff must allege that CMI was once present on her work and later taken away. Here, CMI was not "taken away" or "gotten rid of." Instead, KFA alleges that AGS and BluEnt used KFA's architectural plans to generate nonidentical renditions of KFA's copyrighted works. ECF No. 15 ¶¶ 41–48, 69–93. AGS and BluEnt's works never included KFA's CMI in the first place. CMI cannot be "removed" from a separate work that never included CMI to begin with.

KFA argues that the DMCA applies where a defendant has not maintained the plaintiff's CMI on copies of the plaintiff's works, contending that the Court's interpretation "rewrites" the DMCA by including "additional elements." ECF No. 27 at 15. To the contrary, the Court's interpretation merely applies the plain meaning of the term "remove" to the facts before it. KFA additionally cites *Preston Wood & Assocs., LLC v. RZ Enterprises USA, Inc.*, No. H-16-1427, 2018 WL 2059244 (S.D. Tex. May 3, 2018), for the proposition that the DMCA applies in this case. *Id.* at 16. However, *Preston Wood* is distinguishable from the present case. In *Preston Wood*, the defendants merely asserted—without evidence in a motion for summary judgment—that they had produced the works that did not include the plaintiff's CMI "from scratch." *Preston Wood*, 2018 WL 2059244, at *2. There, the court concluded that there was "ample evidence to raise a genuine issue of material fact . . . regarding whether Defendants created their marketing materials 'from scratch' or, instead, by using Plaintiff's architectural works from which Defendants had removed or altered copyright management information." *Id.* Here, KFA specifically alleges that AGS and BluEnt created the floorplans and renderings based on KFA's architectural designs—not that AGS and BluEnt reproduced the copyrighted works and cropped or deleted KFA's CMI. *E.g.*, ECF No. 15 ¶¶ 42–48. Critically, the court in *Preston Wood* did not expressly discuss the meaning of "remove" within the context of the DMCA. *See Preston Wood*, 2018 WL 2059244, at *2.

Furthermore, several courts have interpreted the DMCA as the Court does here.[3] For example, in *Design Basics, LLC v. WK Olson Architects, Inc.*, the plaintiff brought a DMCA claim, alleging that the defendant "remov[ed] or omit[ted] Plaintiffs' CMI from [the] infringing plans." *Id.* at *5. The court dismissed the DMCA claim, reasoning that the plaintiff had not alleged that the defendant "directly reproduced their plans without CMI." No. 17 C 7432, 2019 WL 527535,

---

[3] Indeed, the Court has already construed the DMCA in this context in a related case, *Kipp Flores Architects, LLC*, 2022 WL 1105751, at *3.

at *5 (N.D. Ill. Feb. 11, 2019) Rather, the defendant copied aspects of the original work and did

not include the plaintiff's CMI, and "[b]asing a drawing on another's work is not the same as

removing copyright management information." *Id.* (quoting *Frost-Tsuji Architects v. Highway Inn,

Inc.*, No. 13-00496 SOM/BMK, 2014 WL 5798282, at *5, 7 (D. Haw. Nov. 7, 2017)). Likewise,

in *Huffman v. Activision Publishing*, the court concluded that the DMCA does not establish

liability for "the mere failure to add truthful CMI to a copy." No. 2:19-cv-00050-RWS-RSP, 2020

WL 8678493 (E.D. Tex. Dec. 14, 2020), *report and recommendation adopted*, 2021 WL 2141352,

at *11 (E.D. Tex. May 26, 2021); *see also Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp.

2d 1352, 1359 (N.D. Fla. 2010) (concluding that CMI was not "removed" from the copyrighted

works when the work was "allegedly copied into a different form and then incorporated into the

note packages."); *Kirk Kara Corp. v. Stone & Metal Corp.*, No. CV 20-1931-DMG, 2020 WL

5991503, at *6 (C.D. Cal. Aug. 14, 2020) ("[W]hile the works may be *substantially similar*,

Defendant did not make *identical* copies of Plaintiff's works and then remove the engraved CMI.

In such cases, even where the underlying works are similar, courts have found that no DMCA

violation exists where the works are not identical." (emphasis in original)). Thus, KFA's DMCA

claims must be dismissed.[4]

### B. Copyright Infringement

KFA further contends that Defendants infringed on its copyrighted works by distributing

the AGS Graphics and BluEnt renderings without KFA's CMI. KFA specifically alleges that all

---

[4]        KFA argues at length that the License Agreement estops Defendants from refuting their liability under the
DMCA because the License Agreement's terms state that the distribution of copies of KFA's architectural works
without KFA's CMI "will be unauthorized and a violation of the DMCA." ECF No. 27 at 11; ECF No. 29 at 13.
However, it is axiomatic that private parties cannot rewrite the elements of a statute via contract. *Cf. Phila. Indem.
Ins. Co. v. White*, 490 S.W.3d 468, 490 (Tex. 2016) ("[W]hen a contractual arrangement is inconsonant with public
policy expressed in a regulatory statute, preservation of contractual freedom and its indispensable partner—contract
enforcement—must yield.") (internal citations and quotation marks omitted). Imposing liability under the DMCA
requires removal of CMI with the intent to mask infringement, regardless of what the License Agreement might say.

Defendants are directly, vicariously, and contributorily liable for the alleged infringements. AHV argues that KFA's infringement claim must be dismissed because KFA has failed to make a side-by-side comparison of its work and the alleged infringing work, because its use of the copyrighted works was licensed, and because KFA does not have a copyright interest in the floorplans and renderings. The AMH Creekside Defendants argue that the floorplans and renderings are "pictorial representations" specifically exempted from infringement under 17 U.S.C. § 120(a) and, therefore, they cannot be held liable for the alleged distributions.

To establish a prima facie copyright infringement claim, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendants do not dispute the validity of KFA's copyrights; rather, they dispute that KFA has plausibly alleged that they unlawfully copied KFA's protected works. To demonstrate copying under the second element, a plaintiff must establish both factual and actionable copying. *Lee*, 379 F.3d at 141. Proof of factual copying requires that the defendant in fact used the copyrighted material, which can be shown through either direct or circumstantial evidence showing both "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 368 (5th Cir. 2004) (quoting *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001)), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). To show probative similarity, Plaintiff may show that "when compared as a whole, [the two works] are adequately similar to establish appropriation." *Peel*, 238 F.3d at 397. Once the plaintiff establishes factual copying, he must next demonstrate that the

copying is legally actionable by showing that the allegedly infringing work "is substantially similar to protectable elements of the infringed work." *Lee*, 379 F.3d at 142.

Therefore, Plaintiff's claim for copyright infringement must satisfy three elements: "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (per curiam).

### 1. KFA's direct infringement claim against AHV survives because at this stage of the litigation, KFA is not required to plead evidentiary facts.

AHV asserts that KFA's allegations of copying are conclusory because KFA has failed to identify the protectible elements of its copyrighted works or make a side-by-side comparison of the copyrighted work and the alleged infringing work to show substantial similarity. *See* ECF No. 17 at 14–16. Both arguments fail for the same reason.

KFA is not required to prove each element of its copyright claim in its Complaint; it need only provide enough factual allegations to draw the reasonable inference that the elements exist. *Patrick*, 681 F.3d at 617. KFA has fulfilled its burden to allege such facts. KFA identifies numerous instances in which AHV reproduced and distributed copies of KFA's architectural works, either of the plans themselves or by AHV's creation and distribution of marketing materials in connection with the AMH Creekside Development. *See, e.g.*, ECF No. 15 ¶¶ 231–41. These allegations are sufficient and give AHV notice of the claims against it. *See Lee*, 379 F.3d at 142 (stating that "the question whether two works are substantially similar should be left to the ultimate factfinder"); *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, No. 6:12-CV-0042, 2013 WL 2189952, at *2 (S.D. Tex. May 20, 2013) (rejecting the notion that the plaintiff must identify the

exact elements of his work that were allegedly copied in his complaint). Therefore, KFA's allegations suffice to state a claim against AHV for direct infringement.

AHV further asserted at oral argument that its use of KFA's copyrighted works was licensed, and therefore, does not constitute infringement. Hr'g Tr. 50:8–17. "A copyright owner may grant a license in his work, thereby waiving his right to sue the licensee for copyright infringement." *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 771 (N.D. Tex. 2006). However, "uses of the copyrighted material that exceed the scope of the license may infringe the licensor's copyright." *Energy Intel. Grp., Inc. v. Bank of Am., N.A.*, No. 4:17-CV-3767, 2018 WL 3303166, at *6 (S.D. Tex. July 5, 2018) (quoting *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 728 (E.D. Mich. 2013)). The License Agreement plainly states: "Any publication of [KFA's] copyrighted works by Client must display the copyright symbol with [KFA's] company name and year of first publication. This expressly includes but is not limited to any display of the plan(s) or architectural works depicted therein in brochures, pamphlets, or in any published media, such as newspaper or magazine advertisements, and that may be posted electronically on the Internet/Web." ECF No. 15-1 at 3–4. While AHV was permitted to advertise the AMH Creekside development through depictions of KFA's copyrighted works, it had to do so in conformity with the Licensing Agreement. KFA alleges that AHV did not do so. Thus, KFA has sufficiently pled its direct infringement claim against AHV.

AHV additionally asserted during oral argument that KFA cannot bring a claim for infringement because the alleged infringing works are derivative works created by AGS and BluEnt and, therefore, KFA has no copyright ownership in the floorplans and renderings. Hr'g Tr. 50:18–24. A derivative work is one "based upon one or more preexisting works . . . . A work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a

whole, represent an original work of authorship, is a 'derivative work.'" 17 U.S.C. § 101. In determining whether the work is a derivative, "the key inquiry is whether there is sufficient nontrivial expressive variation . . . to make it distinguishable in some meaningful way." *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 751–52 (S.D. Tex. 2012).

The amended complaint alleges that "KFA provided copies of the Copyrighted Works to BluEnt [and AGS] in electronic form," and that BluEnt and AGS used these copies to generate the floorplans and renderings for marketing purposes. *See, e.g.*, ECF No. 15 ¶¶ 42–46, 70–74. A simple change in format—from an electronic file to a three-dimensional model or floorplan—is insufficient to create a derivative work. *See, e.g.*, *Schrock v. Learning Curve Intern, Inc.*, 86 F.3d 513 (7th Cir. 2009) ("[T]he author [must] contribute[] something more than a merely trivial variation, something recognizably his own.") (quoting *Chamberlin v. Uris Sales Corp.*, 150 F.2d 512, 513 (2d Cir. 1945)); *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 752 (S.D. Tex. 2012) ("[T]he case law holds that simply changing the medium of expression constitutes a trivial variation."); *CRC Press L.L.C. v. Wolfram Rsch. Inc.*, 149 F. Supp. 2d 500, 509 (C.D. Ill. 2000) ("Changing the medium in which a copyrightable work is displayed is not a sufficient change to give rise to a derivative work."); 1 NIMMER ON COPYRIGHT § 3.03(A) ("Any variation will not suffice, but one that is sufficient to render the derivative work distinguishable from its prior work in any meaningful manner should be sufficient."). While AHV asserts there was some creative input on AGS and BluEnt's part, the Court cannot conclude from the allegations in the

amended complaint—which the Court must take as true—that the renderings and floor plans are derivative works. Accordingly, KFA's direct infringement claim against AHV survives.

### 2. KFA's copyright infringement claims against the AMH Creekside Defendants must be dismissed because the floorplans and renderings are exempted from copyright protection under 17 U.S.C. § 120(a).

The AMH Creekside Defendants assert that KFA cannot bring a copyright infringement claim for their dissemination of the marketing materials without KFA's copyright notice. Specifically, the AMH Creekside Defendants argue that the BluEnt and AGS renderings constitute "pictorial representations" of KFA's works, and as such, they are exempted from copyright protections pursuant to 17 U.S.C. § 120(a). In response, KFA argues that the AMH Creekside Defendants cannot seek dismissal based on this affirmative defense at this stage in the proceedings and that the renderings are not exempted by § 120(a).

Under § 120(a), a copyright in an architectural work that has been constructed "does not include the right to prevent the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a public place." Accordingly, a defendant asserting an affirmative defense under § 120(a) must demonstrate (1) that the alleged infringing work constitutes a picture, painting, photograph, or other pictorial representation of the copyrighted architectural work and (2) that the copyrighted architectural work has been constructed and is ordinarily visible from a public place.

"'[D]ismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense,' provided that the affirmative defense 'appear[s] on the face of the complaint.'" *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020) (citing *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 470 (5th Cir. 2006)). Here, the

parties agree that § 120(a) constitutes an affirmative defense. KFA argues that it is premature to consider the defense, however, because "there is nothing in [the amended complaint] alleging when the buildings were constructed, and that they were visible from a public place when the pictorial works were created." ECF No. 29. at 19–20. But KFA expressly alleges both facts repeatedly in its amended complaint. ECF No. 15 ¶¶ 49–50, 55–56, 61–62, 67–68, 77–78, 83–84, 89–90, 102–03, 108–09, 114–15, 127–28, 133–34, 139–40, 151–52, 156–57, 161–62, 166–67, 171–72, 176–77 (alleging that "[t]he floorplan drawing in Paragraph . . . was created prior to the construction of the building depicted in it[,]" and "[t]he floorplan drawing in Paragraph . . . was not created from viewing a constructed building located in or ordinarily visible from a public place."). Therefore, the Court may properly consider the AMH Creekside Defendants' § 120(a) defense at this juncture.

As a threshold matter, one of KFA's copyrighted works, Plan 1529, includes a technical drawings copyright in addition to a copyright in the architectural work. Accordingly, KFA asserts, that the § 120(a) exemption does not apply to Plan 1529. Hr'g Tr. 61:9–16. An "architectural work," as referenced in § 120(a), is defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101. Consequently, the § 120(a) exemption protects pictorial representations regardless of whether the copyright holder has a copyright in the structure itself or in the technical drawings. *Builders Mut. Ins. Co. v. Donald A. Gardner Architects, Inc.*, 856 F. Supp. 2d 773, 777 (D.S.C. 2012).

As to the first element of a § 120(a) defense, the Court concludes that the floorplans and renderings constitute pictorial representations as contemplated by § 120(a). "[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful

intellect would discover." *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925) (internal quotation marks omitted).  It is clear that, based on the statute's plain meaning, that the renderings and floorplans are both representations of KFA's works—one a representation of the outside of the structure and the other of the interior layout. Further, "pictorial, graphic, and sculptural works," as defined by 17 U.S.C. § 101, includes "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." The renderings and floorplans could safely be categorized as diagrams or models. It "is a commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law.'" *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3 (2013)). Given the preexisting definition of "pictorial work" in § 101, and the lack of distinction between "representation" and "work" in the statute, the Court presumes that Congress intended to incorporate § 101's definition of "pictorial" into § 120(a).

KFA objects that floorplans are not considered "pictorial representations" under § 120(a). ECF No. 29 at 15. KFA relies on an Eighth Circuit opinion stating that to consider floorplans a pictorial representation would be "to render the specific enumerations superfluous." *Designworks Homes, Inc. v. Columbia House of Brokers Realty*, 9 F.4th 803, 810 (8th Cir. 2021). In *Designworks*, the Eighth Circuit reasoned that § 120(a)'s specific enumerations of "pictures, paintings, [and] photographs" reveals a "certain quality" that § 120(a) requires, which is a "connot[ation] [of] artistic expression." 9 F.4th at 808. Thus, the Eighth Circuit concluded that because floorplans serve the functional purpose of "informing potential buyers of home layouts and interiors" and "help[ing] to sell homes," they were not exempted under § 120(a). *Id*. But art and function are not mutually exclusive, and marketing materials may be and usually are both.

Indeed, in enacting the Architectural Works Copyright Protection Act, Congress recognized that architecture itself is both artistic and functional: "Architecture is a form of artistic expression that performs a significant societal purpose." H.R. Rep. No. 101-735, at 6936, 6953 (1990).[5]

As to the timing element, KFA alleges that AMH Creekside distributed the relevant marketing materials in or after 2019. *See* ECF No. 15 ¶¶ 191, 260–61. However, KFA's copyrighted works had already been constructed at that time in connection with the Pflugerville and Georgetown developments undertaken by AHV. *See id.* ¶ 34; ECF No. 43.[6] Although KFA attempts to plead around this issue in its amended complaint, the certificates of occupancy of the Austin homes show that KFA's works were complete and inhabited by 2018. ECF No. 43. Accordingly, the Court concludes that AMH Creekside's distributions of the renderings and floorplans cannot constitute infringement pursuant to § 120(a).

### 3. KFA's contributory infringement claims against AHV must be dismissed, but such claims against the AMH Creekside Defendants survive.

KFA further alleges that AHV is contributorily liable for the infringements committed by the AMH Creekside Defendants in connection with the distribution of the floorplans and renderings. "A party is liable for contributory infringement when it, 'with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another.'" *Alcatel USA, Inc. v. DGI Tech., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). The Court has

---

[5]     Further, accepting the Eighth Circuit's reasoning in *DesignWorks* would have additional undesirable consequences. For example, real estate agents often include simplified floorplans with other pictures of homes for sale on the Multiple Listing Service to market their listings and assist buyers in assessing a home's layout. It is unreasonable to assume that Congress intended to subject real estate agents to copyright infringement liability for a floorplan posted online.

[6]     "Judicially noticed facts may also be considered in ruling on a motion to dismiss." *Basic Capital Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)); *see also* FED. R. EVID. 201(d).

concluded that the AMH Creekside Defendants did not engage in infringing conduct; thus, AHV cannot be held liable for contributory infringement.

KFA also asserts that the AMH Creekside Defendants are contributorily liable for each other's and AHV's infringing conduct in connection with Creekside Ranch. ECF No. 15 ¶¶ 325–30. Again, because the AMH Creekside Defendants did not infringe on KFA's copyrights, they cannot be contributorily liable for each other's conduct. However, because the Court has not dismissed the direct infringement claims brought against AHV, it will not dismiss KFA's contributory infringement claim against the AMH Creekside Defendants for AHV's alleged conduct.

KFA finally asserts that all Defendants are vicariously liable for one another's conduct in connection with Creekside Ranch. The Court's analysis concerning contributory infringement applies with equal force to such claims.

### C. Conversion

KFA additionally asserts a claim for conversion against AMH Creekside. ECF No. 15 ¶ 334. It alleges that AMH Creekside's refusal to return all plans, drawings, specifications, electronic data, and other documents prepared by KFA in connection with the Creekside Ranch development after KFA terminated the Licensing Agreement amounts to conversion. *Id.* ¶¶ 335–39. AMH Creekside asserts that KFA's conversion claim is barred by the independent injury rule. ECF No. 18 at 28–31.

Under the independent injury rule, "if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may sound in both tort and contract, but if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Exxon*

*Mobil Corp. v. Kinder Morgan Operating L.P. "A"*, 192 S.W.3d 120, 126–27 (Tex. App.— Houston [14th Dist.] 2006, no pet.). Put differently, where the rights and duties underpinning a plaintiff's tort claim derive entirely from a contract, the independent injury rule bars the plaintiff's tort claim. In determining whether a plaintiff may recover on a tort theory, the court should examine the nature of the plaintiff's claimed loss. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.*

KFA's claimed loss is the subject matter of the contract between the parties to this case. KFA's amended complaint specifies: "Under the terms of the License Agreement, KFA is entitled to possession of all such items of personal property upon termination of the License Agreement." ECF No. 15 ¶ 335. The amended complaint further alleges that KFA notified AMH Creekside that it was invoking its termination rights under the License Agreement and demanding the return of its property, which AMH Creekside refused. *Id.* ¶¶ 337–40. Additionally, KFA asserts that it is seeking to vindicate its rights under the licensing agreement by seeking an injunction "ordering AMH Creekside to deliver to KFA all copies of all plans, drawings, specifications, and electronic data or other documents prepared by KFA for Creekside Ranch[.]" *Id.* ¶ 341. AMH Creekside's duty to return KFA's materials, though, arises solely from the contract. While a general legal duty exists for a party not to convert the property of another, in this case, because the rights of the parties with respect to KFA's intellectual property are governed by the agreement between them, KFA's claim sounds in contract, not in tort. *See Exxon Mobil Corp.*, 192 S.W.3d at 128.

Nonetheless, KFA asserts that this case is similar to *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F. Supp. 3d 633 (W.D. Tex. 2019), where this Court concluded the independent injury rule did not bar a plaintiff's claim for theft where a contract governed the parties

relationship. However, KFA fails to meaningfully engage with the facts or the Court's reasoning in *Bates Energy* and summarily asserts that "breach of contract and conversion claims for a failure to return property can coexist." ECF No. 29 at 33. Indeed, the Court concluded that the independent injury rule did not bar the theft claim in *Bates Energy*. 361 F. Supp. 3d at 656–58. Even so, the Court found that "where the duty is defined by the contract and the injury claimed is the loss of a contractual expectancy as a result of the breach of the contractually defined duty," the independent injury rule bars a plaintiff's tort claim. *Id.* at 658. That is precisely the case here. KFA alleges that AMH Creekside was obligated to return to KFA all copies of the plans, drawings, and other data prepared by KFA in connection with the Creekside Ranch project under the terms of the License Agreement. AMH Creekside has not done so. Accordingly, KFA's conversion claim seeks to vindicate its contractual right under the License Agreement—the return of KFA's plans and drawings. Without the License Agreement, KFA has no right to the physical possession of the tangible embodiments of its copyrighted work. *See United States v. Smith*, 686 F.2d 234, 240 (5th Cir. 1982) ("[O]wnership of a copyright does not encompass ownership of the words, sounds, pictures, or images embodied in the tangible object. In other words, a copyright is independent of both its physical manifestation and the very thing that is copyrighted."). Thus, the Court concludes that KFA's conversion claim is barred by the independent injury rule and must be dismissed.

### III.    Specific Performance

Finally, KFA seeks an order compelling AMH Creekside to return to KFA all plans, drawings, specifications, electronic data, and other documents prepared by KFA in connection with the Creekside Ranch development. ECF No. 15 ¶¶ 342–43. AMH Creekside contends that this claim must be dismissed because certain conditions precedent under the License Agreement have not been met. ECF No. 18 at 13.

A court must construe a contract as a matter of law when the contract language is unambiguous. *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).[7] "Contract language that can be given a certain or definite meaning is unambiguous . . . ." *Title Res. Guar. Co. v. Lighthouse Church & Ministries*, 589 S.W.3d 226, 232 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "A contract is ambiguous only if it is subject to 'two or more reasonable interpretations after applying the pertinent rules of construction.'" *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)). "Ambiguity does not exist merely because the parties assert forceful and diametrically opposing interpretations." *Id.*

When interpreting a contract, the court's "primary concern is to ascertain and give effect to the written expression of the parties' intent." *Sherrad v. SignAd, Ltd.*, 637 S.W.3d 192, 199 (Tex. App.—Houston [14th Dist.] 2021, no pet.). The contract's terms must be given "their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). A court considers the entire contract, examining each provision so that no term is mere surplusage. *Sherrad*, 637 S.W.3d at 199. Further, the court should "avoid a construction that is unreasonable, inequitable, and oppressive." *Id.*

A condition precedent to an obligation to perform under the contract "are those acts or events which occur subsequent to the making of a contract and which must occur before there is a right to immediate performance and before there is a breach of a contractual duty." *Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 825 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). "A party seeking to recover under a contract bears the burden of proving

---

[7]     The License Agreement does not contain a choice-of-law provision. Accordingly, the Court will apply Texas law.

that all conditions precedent have been satisfied." *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998). If a condition precedent has not been fulfilled, "the contract or obligation attached to the condition cannot be enforced." *Cajun Constructors, Inc.*, 380 S.W.3d at 826.

KFA alleges that all conditions precedent that entitle it to the return of its materials related to the Creekside Ranch development have been fulfilled. Specifically, it argues that the License Agreement permits it to terminate the agreement at any time upon thirty days' notice, which in turn triggers AMH Creekside's obligation to return all documents containing KFA's plans or drawings. AMH Creekside disputes this interpretation of the License Agreement. It argues that only a "default," as defined by the agreement, triggers any obligation for it to return such documents.

The License Agreement provides AMH Creekside the right to "use, copy, reproduce, and display [KFA's] Plans and/or construction documents for the purpose of constructing, marketing and selling the Project/Product in the Market Area(s)[.]" ECF No. 15-1 at 4. The agreement provides a fee structure for the license as follows:

> V.b. The fee structure for the purchase of the license for the re-use of any plan shall be at a rate of two hundred dollars ($200.00) per unit as prescribed on Schedule 2H. Upon issuance of permit for construction of each unit, Client shall notify [KFA] in writing, providing legal description and/or address for each site, and shall purchase licenses for re-use. Failure to timely provide such written notice and/or timely purchase of any required Re-Use License shall automatically terminate and nullify any and all express or implied licenses granted Client to use [KFA's] drawings or architectural works.

*Id.*

The License Agreement further specifies the terms regarding termination and default. Specifically, the agreement provides:

VII.a. This agreement may be terminated by either party, upon delivery of written notice to the other party, of not less than thirty (30) days. Client's failure to review and return [KFA's] submissions (including without limitation: floor plan, or elevation design, or construction document checksets) within the time specified in this Agreement may be construed as suspension of the Product/Project, in which even [KFA] may terminate this Agreement upon written notice to Client.

. . .

VII.c. Events of Default include:
- Failure of the Client to make payment to the Architect in accordance with the terms of this Agreement and such nonconformance shall continue for a period of ten (10) days.
- Client sells, assigns, or transfers its rights and obligations under this Agreement.
- Client terminates it[s] business activities for any reason.
- Client fails to report and/or pay reuse fees in a manner specified in 4H of this contract.

Upon occurrence of default, [KFA] may immediately cease all work on behalf of Client and shall have the right to terminate this Agreement. Upon the occurrence of any termination of this Agreement, all rights of Client shall cease and Client will immediately halt construction, marketing, or the use of [KFA's] plans, drawings, forms or documents for any purpose. Client shall deliver to [KFA's] place of business, at Client's expense, all plans, documents, drawings and other material incorporating the plans, drawings, or copyrights. Client will further provide a detailed list of any persons or entities that may have copies of the plans or drawings, including copies of any contracts or agreements between Client and such persons or entities.

*Id.* at 5–6.

The overall structure of the agreement suggests that upon default, KFA may terminate the agreement, thereby triggering all the rights and responsibilities outlined in section VII.c. The agreement first discusses discretionary termination of the agreement in section VII.a., specifying that either party may terminate the agreement for any reason upon thirty days' notice. It then specifies the events that may constitute a default, and provides that, upon a default, KFA has a

right to terminate the agreement. In the same section, it goes on to state that upon a termination, the client will halt construction, cease the marketing or use of KFA's plans or drawings for any purpose, and return all materials incorporating KFA's plans. Notably, though, this provision does not appear when discussing a discretionary termination—only in the section outlining the events of default. This structure suggests that rights and responsibilities outlined in section VII.c arise only in the context of a default.

But the agreement could be read another way. Section VII.c. specifies that "[u]pon *any* termination" the client must halt construction, cease the marketing or use of KFA's plans or drawings for any purpose, and return all materials incorporating KFA's plans. This suggests that any and all terminations of the agreement—not only a default—triggers the rights and responsibilities outlined in section VII.c.

However, this interpretation leads to absurd results. If *any* termination triggers all the rights and obligations under section VII.c, then, for example, the client could report permitting of all its units and fully pay its licensing fees, and KFA could immediately provide notice of its discretionary termination of the License Agreement—with the result that, thirty days later, the client would be obligated to halt construction and return all plans, etc. to KFA. Indeed, KFA could do the same when construction was completed—at extensive cost to the client—but before any houses had been placed on the market. Then, the client would be barred from using any imagery of the development to market the houses that had already been built according the KFA's plans. This reading of the License Agreement is unreasonable and should thus be avoided by the Court. *See Sherrad*, 637 S.W.3d at 199. Thus, the Court concludes that only a default triggers the rights and obligations under section VII.c.

In the alternative, KFA contends that default occurred when AMH Creekside allegedly violated the terms of the License Agreement by (1) failing to include KFA's copyright notice on copies of KFA's architectural works; and (2) distributing copies of KFA's architectural works without KFA's copyright notice. KFA points to the use of the word "include" in section VII.c as showing that the list of events provided is not exclusive.[8] *Id.* at 17.

Indeed, the use of the word "include" suggests that default is not limited to the examples provided in section VII.c. Merriam-Webster defines "include" as "to take in or comprise as part of a whole group," meaning that the listed examples are not exclusive. *Include*, Merriam-Webster, https://www.merriam-webster.com/dictionary/include (last visited August 4, 2022). AMH Creekside argues, though, that default is limited to those sorts of breaches contemplated by section VII.c, not just any breach.[9] However, the use of the word "include" does not foreclose the possibility that the alleged breach of the agreement may constitute a default. Therefore, the Court concludes that what constitutes a "default" under the License Agreement is ambiguous. Accordingly, the Court will not dismiss KFA's claim for specific performance at this stage of the litigation.

---

[8]     KFA additionally argues that the term "default" encompasses any breach of the licensing agreement because, it first contends, default should be defined according to its ordinary meaning: "the omission or failure to perform a legal or contractual duty." ECF No. 29 at 18 (quoting *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 110 n.10 (5th Cir. 1994)). The Court does not address this argument because, as will be discussed, it concludes that that the term "default" is ambiguous.

[9]     In advancing this argument, AMH Creekside does not expressly rely on, but effectively asks the Court to deploy, the doctrine of ejusdem generis. "The doctrine of ejusdem generis provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *Nicol v. Gonzales*, 127 S.W.3d 390, 395 (Tex. App.—Dallas 2004, no pet.). The doctrine applies only when the contract is ambiguous. *Id.* Since an ambiguous contract creates a fact dispute for a jury to resolve, the Court will not apply the doctrine here. *See Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (per curiam) ("If the contract is ambiguous, the party's intent is a question of fact for the jury.").

**CONCLUSION**

For the foregoing reasons, Defendant AHV's motion to dismiss (ECF No. 17) is **GRANTED IN PART** and **DENIED IN PART**. Defendants AMH Creekside and AH4R's motion to dismiss (ECF No. 18) is **GRANTED IN PART** and **DENIED IN PART**.

KFA's DMCA and contributory infringement claims against Defendant AHV are **DISMISSED WITH PREJUDICE**.

KFA's DMCA, infringement, and conversion claims against Defendant AMH Creekside are **DISMISSED WITH PREJUDICE**.

KFA's DMCA and direct infringement claims against Defendant AH4R are **<u>DISMISSED WITH PREJUDICE.</u>**

KFA's direct infringement claim against AHV, contributory infringement claims against AMH Creekside and AH4R, and specific performance claim against AMH Creekside remain pending.

It is so **ORDERED**.

**SIGNED** this 16th day of September, 2022.


XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE